JOHN LOAR v. STATE OF NEBRASKA.

FILED MARCH 22, 1906. No. 14,514.

1. **Rape:** EVIDENCE. In a trial for statutory rape, admissions by the defendant showing that he planned and procured an opportunity to commit the act charged, with evidence of familarities between them, furnishes sufficient corroboration of the girl's positive testimony to support a judgment of conviction.

2. **Review:** RECORD. Affidavits found in the files of the case or attached to the transcript cannot be considered as having been used in support of a motion for new trial, unless they are included in and shown by the certificate of the proper officer to be a part of the bill of exceptions, and to have been actually used in evidence upon the hearing of the motion.

ERROR to the district court for Garfield county: JOHN R. HANNA, JUDGE. *Affirmed.*

*E. M. White* and *A. M. Robbins,* for plaintiff in error.

*Norris Brown, Attorney General,* and *W. T. Thompson, contra.*

SEDGWICK, C. J.

The defendant, John Loar, plaintiff in error here, was convicted in the district court for Garfield county of the crime of statutory rape. He has brought the judgment here for review upon a petition in error.

1. The principal contention is that the evidence is not sufficient to support the verdict. The act itself is testified to by the girl Mary Kramer, and is denied by the defendant. It is insisted that the evidence of the girl is inconsistent with itself, that her testimony is unreliable, and that there are no corroborating circumstances. The record shows that the girl was between 16 and 17 years of age. Her parents were German, and she was not entirely familiar with the English language, or, at all events, it appears from the record that she frequently failed to comprehend the full force of the questions that were asked her. There are apparent inconsistencies in her testimony, and her evidence, if uncorroborated, would be subject to criticism. Whether this fact is due in part to her ignorance and want of familiarity with the language used, or was altogether owing to her failure to comprehend the importance of accuracy and directness in her evidence given in so important a matter, it is impossible to say from the condition of this record. We think it is a mistake to suppose that her evidence is not corroborated. Indeed, the corroboration is so strong that it might with candor be insisted that the proof of the defendant's guilt was sufficient without regard to the testimony of the prosecutrix. The defendant was a man

past 26 years of age. He had been in the army during the Spanish war; had traveled considerably and had lived in different places, apparently not long at any one time in the same place. A short time before the transaction in question he had begun working by the month for Mr. Spelts at his ranch, in Garfield county, and had boarded and roomed with the family, which consisted of Mr. and Mrs. Spelts. Mr. and Mrs. Spelts left home to be gone from the county for several days. Shortly before that Mary Kramer had stayed a few days and nights with Mrs. Spelts, and the defendant states at that time the girl came to his sleeping room unknown to Mr. and Mrs. Spelts, and that there were then familiarities between them. Mr. and Mrs. Spelts both testify that, when they were about to go away from home, the question being raised with the defendant as to who should do his cooking for him while they were gone, they suggested a certain woman whom he might procure to cook for him, but objected to his getting Mary Kramer who had before that time stayed with Mrs. Spelts. The defendant modifies this statement somewhat, but we do not understand him to deny that they objected to his getting Mary Kramer. Soon after they had gone, within an hour or two, according to the defendant's testimony, he went over to Mr. Kramer's place, about three miles distant, for the purpose of getting Mary to come and stay with him. Mr. and Mrs. Kramer both testify that he told them that Mrs. Spelts wanted Mary to come and stay while her husband was gone, and that it was upon that understanding that they allowed her to go. The defendant, however, testifies that he asked them to allow Mary to go over and stay while Mr. Spelts was gone. He says that he did not tell them that Mrs. Spelts was at home, nor did he tell them that Mrs. Spelts had gone. Whatever may have been the language that he used, it is very manifest from the record that Mr. and Mrs. Kramer supposed that Mrs. Spelts was there, and that she had sent for Mary. It also seems clear from the defendant's testimony that he

knew that Mr. and Mrs. Kramer so understood the matter and was aware that they would not have allowed Mary to go if they had known that Mrs. Spelts was away from home. He says that after he and Mary left the Kramer house to go home he told her that Mrs. Spelts was not at home. He also says, in another part of his testimony, that just before they arrived at the Spelts place he told Mary that Mrs. Spelts was not at home. The girl denies this, and says that she did not know that Mrs. Spelts was away from home until, after they had put away the horses, when they went to the door and it appeared that the door was locked. The defendant and the girl stayed at Mr. Spelts' house several days and nights, no other person being present. In this condition of the evidence it is not necessary to discuss in detail the evidence of the girl, who testified explicitly to the criminal act. The defendant himself testifies that soon after they arrived, and either the first evening or the next day, he is not certain which, there were familiarities between them, such as might lead to the act itself. These familiarities, according to his evidence, were continued at various other times during their cohabitation together. The opportunity for sexual intercourse, and the disposition on the part of both parties to commit the crime, when clearly shown, are generally held sufficient to establish the charge. This evidence was furnished by the defendant's testimony.

2. One other contention is discussed in the briefs, and was presented upon the oral argument. This relates to the disqualification of one of the jurors. It is claimed that while the trial was pending, the jury being allowed to separate, one of the jurors expressed in the hearing of several parties a decided opinion as to the guilt of the defendant, and there are among the files in the case affidavits which it is claimed support this contention. The bill of exceptions in the case contains the evidence introduced upon the trial before the jury. It does not purport to contain the affidavits above referred to, nor any other evi-

dence used upon the motion for a new trial. The certificate is that the defendant "in order to maintain the issues on his part produced the following named witnesses, to wit, John Loar and Henry Phillips, who were each sworn and testified on behalf of the defendant, a copy of whose testimony is contained at length herein; and the defendant in order to further maintain the issues on his part produced and offered the following exhibits, to wit, exhibit 1 and 2, which are hereto attached and made a part hereof." Exhibit 1 is an affidavit for continuance, and exhibit 2 is a pension certificate, so that the affidavits used upon the motion for a new trial are expressly excluded by the certificate itself; that they are entitled in the case does not tend to authenticate them. It has been so many times determined by this court, and others that fugitive papers found among the files which are not identified by the certificate as a part of the bill of exceptions, cannot be considered by the court, that it is unnecessary to cite authorities or further discuss the matter.

The judgment of the district court is fully sustained by the record, and is therefore

AFFIRMED.